**ECODYNE CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**Siddharth SHAH, Ted Rivas, and Gerta Rivas, individuals, Shiloh Industrial Park, Inc., a California Corporation, and American Home Assurance Co., a New York Corporation, Defendants.**

**No. C–88–4813–JPV.**

United States District Court, N.D. California.

Aug. 28, 1989.

Raymond C. Marshall, Kevin T. Haroff, Whitman F. Manley, McCutcheon, Doyle, Brown & Enersen, San Francisco, Cal., for plaintiff.

Daniel Rapaport, Nichols, Doi, Rapaport & Chan, San Francisco, Cal., Grant A. Barbour, Sonoma, Cal., for Shah.

Barry D. Parkinson, Petaluma, Cal., for Rivases and Shiloh.

David Bunim, Haas & Najarian, San Francisco, Cal., for American Home Assur.

## MEMORANDUM OF DECISION AND ORDER GRANTING MOTION TO DISMISS AND DISMISSING ACTION

VUKASIN, District Judge.

### INTRODUCTION

Pursuant to F.R.C.P. 12(b)(6), defendant Siddharth Shah ("Shah"), joined by defendants Ted and Gerta Rivas (the "Rivases") and Shiloh Industrial Park, Inc. ("Shiloh") (Shah, the Rivases and Shiloh are sometimes collectively "defendants"), have moved to dismiss plaintiff Ecodyne Corporation's ("Ecodyne") claims under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980

§§ 107(a)(2) and 113(f)(1), 42 U.S.C. §§ 9607(a)(2) and 9613(f)(1) respectively, and to dismiss or, in the alternative, to stay Ecodyne's pendent state law claims. Raymond C. Marshall of McCutchen, Doyle, Brown & Enersen, San Francisco, CA represented plaintiff. Daniel Rapaport of Nichols, Doi, Rapaport & Chan, San Francisco, CA and Grant A. Barbour of Sonoma, CA represented defendant Shah. Barry Parkinson of Petaluma, CA represented defendants Ted and Gerta Rivas and Shiloh, Inc. After extensive briefing and thoughtful oral presentations, the Court hereby dismisses this action for the following reasons.

### JURISDICTION

This Court has jurisdiction pursuant to 42 U.S.C. § 9613(b), federal question, and diversity.

### BACKGROUND

This dispute concerns who will ultimately bear the cost of cleaning up chromium polluted groundwater and soil in and about a parcel of real property located at 930 Shiloh Road, Windsor, California.

During the period between approximately June 1969 and January 1984, Ecodyne constructed wooden water tower tanks on the property.[1] Ecodyne treated wood used in the construction of the tanks with a chemical preservative containing hazardous substances including, among other things, chromium. In the Fall of 1982, Ecodyne discovered that chromium had leaked out onto the ground which resulted in elevated levels of chromium in the soil and groundwater at the property. Ecodyne reported this discovery to the California Regional Water Quality Board—North Coast Region (the "Regional Board") and, pursuant to Regional Board orders, commenced investigating the chromium conditions and developing a plan for remedial action.

In September of 1984, Ecodyne sold the property to Shah for $1,450,000 after allegedly reducing the price by $1.5 million. As part of the sales agreement between Ecodyne and Shah, Ecodyne alleges that Shah,

---

1. The background facts are the alleged facts taken from plaintiff's complaint.

in consideration for the reduction in price, agreed to assume responsibility for cleaning up the chromium conditions at and about the property.

In June 1987 Shah sold the property to the Rivases. The purchase agreement between Shah and the Rivases contemplated and addressed the chromium problem at the site. Later that year, in September, the Rivases conveyed title to Shiloh, a corporation in which the Rivases are significant shareholders.

Under defendant Shah, and later Rivases' and Shiloh's, ownership and control, the chromium conditions at the property allegedly worsened. Now Ecodyne, under orders from the Regional Board, is cleaning up the site and seeks recovery of its costs in this Court through CERCLA.

The federal action is not the only litigation among the parties. In 1986, Shah initiated an action in Sonoma County Superior Court against Ecodyne. In the state case, Shah asserts a variety of state law causes of action arising out of the 1984 sale of the property from Ecodyne to Shah. Ecodyne, in the state case, has cross-claimed against Shah.

### APPLICABLE STANDARD ON A RULE 12(b)(6) MOTION TO DISMISS

For purposes of a motion to dismiss, a complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–1849, 23 L.Ed.2d 404 (1969). A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

A. Defendants' motion to dismiss Ecodyne's first cause of action under § 9607(a)(2).

1. The motion hinges on the definition of the word "disposal".

 Ecodyne's first cause of action against defendants is brought under 42 U.S.C. § 9607(a)(2), which provides,

"... any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ... from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable [for costs].

*See* 42 U.S.C.A. § 9607(a)(2) (West 1983).

*In nuce,* defendants seek to dismiss this claim by contending that they did not own or operate the property at any time when the disposal of chromium occurred. Plaintiffs contend that defendants are liable because the general movement and migration of the chromium on the property at the time defendants owned it is, by definition, a disposal. Thus, the outcome of this portion of defendants' motion hinges on the meaning of the term "disposal" as it appears in § 9607(a)(2).

The term "disposal" under CERCLA is defined by § 1004 of the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6903. *See* 42 U.S.C.A. § 9601(29) (West 1983). Pursuant to § 6903(3), the term disposal means,

... the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any ground waters.

*See* 42 U.S.C.A. § 6903(3)(West 1983).

In arguing that the general movement and migration of the chromium constitutes a disposal under § 9607(a)(2), the plaintiffs primarily focus on the words "discharge" and "leaking". Some Courts in examining these definitional components of the word "disposal" have concluded that Congress intended that disposal be given a relatively broad definition. *See e.g. United States v. Waste Industries, Inc.* 734 F.2d 159, 164–65 (4th Cir.1984) (the Court, in interpreting this provision in the context of the Resource Conservation and Recovery Act of

1976, stated that Congress intended "disposal" to have a range of meanings, including conduct, a physical state, and an occurrence). However broad Congress may have intended the definition, Congressional intent does not justify the distortion the statute. Therefore, instead of relying on legislative history (an exercise unnecessary in this case), the Court will apply sound principles of statutory and grammatical interpretation.

2. Grammar and structure of § 6903(3) necessitates a more limited definition of disposal than plaintiff proposes.

The meaning of a word is or may be known from the accompanying words—this is the principle of *noscitur a sociis.* In ascertaining what disposal means, the Court looks at its definitional components and finds that these three nouns (discharge, deposit, and injection) and four gerunds (dumping, spilling, leaking, and placing), when read together, all have in common the idea that someone do something with hazardous substances. Taking the clearest example, the Court notes that "placing", read in the context of the statute, means a person introducing—putting—formerly controlled or contained hazardous substances into the environment. For plaintiff solipsistically to read, for example, "leaking" as meaning the general migration of chemicals and, as such, a disposal under § 9607(a)(2), renders not only the definitional phrase of § 6903(3) "into or on any land or water" superfluous, but would also conflict with the general structure of § 9607(a).

3. The structure of § 6907(a) argues for a more limited definition of disposal than plaintiff proposes.

Pursuant to § 9607(a), four categories of persons, the first two of which are relevant to this case, can be held liable for costs. The first category is under § 9607(a)(1). This category encompasses the current owner of the property. The second category is under § 9607(a)(2) which primarily covers prior owners and operators and is more limited in scope. *See State of New York v. Shore Realty Corp.,* 759 F.2d 1032,

1044 (2nd Cir.1985). To define disposal as plaintiff wishes would effectively make all property owners from the time a site became polluted (up to and including the current owner) potentially liable under § 9607(a)(2) even if these owners did not introduce the chemicals onto the site. Such a construction conflicts with the limited scope of § 9607(a)(2).

In sum, in an effort to provide a more temporal interpretation of § 9607(a)(2), this Court reads this provision as only providing an action against prior owners or operators who owned the site at the time the hazardous substances were introduced into the environment. This Court's reading is consonant with *Emhart Industries, Inc. v. Duracell International Inc.,* 665 F.Supp. 549 (M.D.Tenn.1987), a case upon which plaintiff principally relies for the proposition that disposal means general migration of pollutants, because, unlike the instant case, in *Emhart* the federal action went forward against the party that in fact introduced the pollutants to the environment at the time it owned the property.

4. Within the Ninth Circuit this Court's limited definition of "disposal" is supported.

Within the Ninth Circuit, this Court's reasoning has already been adopted. *See Cadillac Fairview/California Inc. v. Dow Chemical Co.* 21 ERC 1108 (BNA 1985) *rev'd on other grounds,* 840 F.2d 691 (9th Cir.1988). In *Cadillac Fairview* the District Court, applying § 9607(a)(2), granted a motion to dismiss certain defendants that had been owners after Dow Chemical and others had disposed of hazardous substances on the property. *Id.* at 1113.

Based on the foregoing discussion of the law and applying it to the facts, the Court must dismiss plaintiff's first cause of action because it is undisputed that Ecodyne, not defendants, introduced the chromium to the property. Furthermore, this action is dismissed with prejudice because plaintiff can prove no set of facts which would entitle it to relief under § 9607(a)(2) since

Ecodyne alone is responsible for the disposal.[2]

**B. Defendants' motion to dismiss Ecodyne's second cause of action under CERCLA § 9613(f)(1)**

■ In its second cause of action, Ecodyne seeks contribution from defendants pursuant to CERCLA § 9613(f)(1), which provides:

> Any person may seek contribution from any other person who is liable or potentially liable under § 9607(a) of this title, during or following any civil action under ... § 9607(a) of this title.... Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under ... § 9607 of this title. *See* 42 U.S.C.A. § 9613(f)(1)(West 1983 & 1989 Pkt. Part).

Under this cause of action Ecodyne alleges that it is entitled to contribution from defendants insofar as they are liable or potentially liable persons under 42 U.S.C. § 9607(a). The Court recognizes that the complaint either does or possibly could state a cause of action against all three defendants through § 9607(a)(1) (the current owner and operator provision discussed above).

However, given 1.) that the state court action is pending, and 2.) that all the parties contemplated that there were going to be clean-up costs associated with this site and made this a matter of contract in the various sales of the property, the Court reasons that the federal statutory right of contribution that Ecodyne seeks to exercise should give way to the negotiated rights of the parties subject to contractual interpretation in the pending state court case. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) *cited in* Fink & Tushnet, Federal Jurisdiction: Poli-

cy & Practice 690 (Michie 1984) (noting that dismissal or stay of a federal claim in the face of a competing state court action is limited to exceptional circumstances depending on considerations of wise judicial economy). In keeping with its federalism beliefs,[3] the Court hereby dismisses this federal cause of action. As for the state law claims, they may be dismissed when the Court in its discretion deems it proper to do so. *See Carnegie–Mellon University et al. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). This appears to be the proper time to dismiss.

## ORDER

1. Ecodyne's first cause of action pursuant to 42 U.S.C. § 9607(a)(2) is dismissed with prejudice.

2. Ecodyne's second cause of action is dismissed.

3. Ecodyne's pendent state law causes and Shiloh's related counter and cross claims are dismissed.

4. Given the Court's dismissal of the state law claims, the Court declines to rule on a.) Shah's motion, currently under submission, to stay or dismiss the Rivases' and Shiloh's cross-claims and b.) Rivases' and Shiloh's motion, currently under submission, for injunctive relief.

IT IS SO ORDERED.

---

**2.** *Cf. Tanglewood East Homeowners v. Charles Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir.1988) (in the Fifth Circuit's view "disposals" can occur when a later party who did not introduce the hazardous substances into the environment moves, disperses, or releases those substances during landfill excavations and fillings).

**3.** *See e.g. Kirkbride v. Continental Casualty Co. et al.*, 696 F.Supp. 496, 498–99 (N.D.Cal.1988).