AMERICAN INTERNATIONAL UNDER-WRITERS, (PHILIPPINES), INC., a Philippines corporation, Plaintiff–Appellant,

v.

The CONTINENTAL INSURANCE COMPANY, a New Hampshire corporation, Defendant–Appellee.

No. 87–5893.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1987.

Decided April 13, 1988.

William S. Davis, Los Angeles, Cal., for plaintiff-appellant.

Carol A. Pisano, New York City, for defendant-appellee.

Before O'SCANNLAIN and LEAVY, Circuit Judges, and ORRICK, Jr.,* Senior District Judge.

ORRICK, Senior District Judge:

This case poses two important questions. First, we must decide whether exceptional circumstances exist in this case that would justify invoking the abstention doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Second, we must determine whether plaintiff should be permitted to file a second action in federal court after initially choosing to litigate in state court.

Plaintiff, American International Underwriters (Philippines), Inc. ("AIU"), appeals from the dismissal of its action by the United States District Court for the Central District of California based on the abstention doctrine set forth in *Colorado River*. AIU originally brought suit in New York state court, alleging that defendant, The Continental Insurance Company ("Continental"), breached its obligation to plaintiff under two insurance policies. After two-and-a-half years of litigation in New York

state court, AIU filed the present action in the district court, alleging the same facts and claims, but alleging jurisdiction based on diversity.[1] The district court dismissed the complaint, citing *Colorado River*, and *Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*, 554 F.Supp. 277 (C.D.Cal. 1983). The district court found that abstention was necessary to prevent forum shopping and duplicative litigation. We affirm.

## I

In April 1984, AIU brought an action against Continental in the Supreme Court of the State of New York, County of New York. This action in the state court involved the same facts, claims, and contracts of insurance at issue in this case.

In its complaint, AIU alleged that it sustained a loss in the Philippines as a result of an investigation by the Philippine government into certain tax payments made by plaintiff in 1977 and 1978. AIU sought to recover under the insurance policies that Continental had issued to AIU.

During the two-and-a-half years the case was litigated in New York state court, seven motions were argued. The state court decided many substantive issues, including whether AIU had suffered a "loss" under the terms of the insurance policies, and whether Aetna Insurance Company ("Aetna") was a proper party to the lawsuit as the insurer subsequent to Continental. In addition, fairly extensive discovery was conducted in the state action.

As part of this discovery, AIU deposed Frederico Opinion, an investigator for the Philippine National Bureau of Investigation. After Continental objected to various questions at the deposition, AIU sought a ruling from the New York court on the objections. AIU also asked the court to

---

* Honorable William H. Orrick, Jr., Senior United States District Judge, Northern District of California, sitting by designation.

1. Continental argues that diversity jurisdiction does not actually exist in this case. According to Continental, American International Group, Inc. ("AIGI") is an indispensable party that must be joined. AIGI was a plaintiff along with AIU

in the state court action. Because both AIGI and Continental allegedly maintain their principal places of business in New York, joining AIGI would defeat diversity. Although the district court noted that AIGI was a necessary party, the court did not decide whether it was in fact an indispensable party.

rule that the deposition testimony and written report of Mr. Opinion would be admissible at trial. Although the court did not rule on this matter, AIU admits that the "arcane" New York state rules of evidence pose "evidentiary obstacles" to the admission of this evidence. Appellant's Opening Brief at 6. AIU also admits that it filed the present action in federal court to avoid these evidentiary obstacles. *Id.* After AIU brought the present case in the district court, the New York court stayed the state action, pending entry of a final nonappealable judgment in the federal case.

Once AIU filed its complaint in federal court, Continental immediately filed a motion to dismiss the complaint. Continental argued that the district court should abstain and defeat AIU's attempt to improperly remove the state court action to federal court. In the alternative, Continental sought to transfer the action to the United States District Court for the Southern District of New York.

The district court granted the motion to dismiss the complaint, based on the *Colorado River* abstention doctrine. According to the court, principles of wise judicial administration, specifically the prevention of forum shopping and the avoidance of duplicative litigation, warranted abstention. Recognizing that abstention is only to be granted in exceptional circumstances, the court nevertheless found that abstention was appropriate in this case. The court limited its opinion to the abstention issue, and did not reach the issues of removal or transfer.

The district court denied AIU's motion for reconsideration of its ruling. The court reaffirmed its earlier ruling, stating that abstention was warranted because AIU was "rule-of-evidence shopping."

## II

### A

 The standard of review in *Colorado River* abstention cases is abuse of discretion. *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 540 (9th Cir.1985). Although AIU argues that the standard of review is *de novo*, the main case AIU cites for this proposition does not discuss *Colorado River* abstention, but rather deals with the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[2] *See Goldie's Bookstore, Inc. v. Superior Court of California*, 739 F.2d 466, 468–69 (9th Cir.1984). Moreover, this Circuit has applied the abuse of discretion test in a wide variety of abstention cases. *See C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983) (and cases cited therein).

However, the abuse of discretion standard in this case should not be confused with the broader abuse of discretion test used in other matters, such as rulings on certain evidentiary issues. *Mobil Oil*, 772 F.2d at 540; *C–Y Development*, 703 F.2d at 377. In abstention cases, "discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Id.* at 377. Thus, the district court judge in this case must have exercised discretion within the "exceptional circumstances" limits of the *Colorado River* abstention doctrine. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983) (hereinafter cited as *"Cone"*).

### B

In general, abstention from the exercise of federal jurisdiction is considered "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244, *quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Federal courts have a "virtually unflagging obli-

---

**2.** In *Younger*, the Supreme Court stated that a federal court should not interfere with an ongoing state criminal prosecution. Federal courts should abstain from exercising jurisdiction when state prosecutions are pending because courts of equity should not act to restrain criminal proceedings and because notions of comity require a proper respect for state functions. *Id.* at 44, 91 S.Ct. at 750.

gation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

Nevertheless, abstention is considered appropriate in a few well-defined areas to ease friction between federal and state sovereigns. Where a federal court can avoid a constitutional determination by allowing a state court to construe state law, the federal court should abstain. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Federal courts should also abstain when there are difficult questions of state law involving policy considerations that transcend the result in the case at the bar. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058 (1959). Moreover, abstention is proper where federal jurisdiction has been invoked to restrain state criminal proceedings. *Younger*, 401 U.S. at 43–46, 91 S.Ct. at 750–51.

Unlike these other forms of abstention, *Colorado River* abstention is not based on weighty considerations of federal-state relations. Rather, *Colorado River* abstention is designed to promote "wise judicial administration." *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. at 1246–47. As a result, *Colorado River* abstention should only be used in "exceptional" circumstances. *Id.* at 818, 96 S.Ct. 1246–47. *Cone*, 460 U.S. at 19, 103 S.Ct. at 938–39.

Several factors must be considered in deciding whether the exceptional circumstances are present that make it proper to apply *Colorado River* abstention. These factors are: (1) which court first assumed jurisdiction over the property in dispute; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47.

These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a "mechanical checklist." *Cone*, 460 U.S. at 16, 103 S.Ct. at 937; *see also Mobil Oil*, 772 F.2d at 541. For example, in considering the order in which jurisdiction was obtained, it is important not only to determine whether the state or the federal complaint was filed first, but also to assess how much progress has been made in the two actions. *Cone*, 460 U.S. at 16, 103 S.Ct. 937; *Mobil Oil*, 772 F.2d at 542. Moreover, as part of this flexible approach, it may be important to consider additional factors not spelled out in the *Colorado River* opinion, such as the probable inadequacy of the state court proceedings. *Cone*, 460 U.S. at 26, 103 S.Ct. 942.

### C

When the *Colorado River* analysis is applied to the facts of this case, it becomes clear that the district court judge was acting within his discretion when he abstained. Almost every factor in the *Colorado River* analysis indicates abstention was warranted. The facts of this case distinguish it from *Mobil Oil*, in which we found that the district court's decision to abstain was not warranted under the *Colorado River* doctrine.[3]

The first factor to be considered is which court first assumed jurisdiction over the property in dispute. As both AIU and Continental agree, this factor is not relevant,

---

3. *Mobil Oil* involved the interpretation of a contract between several oil companies and the City of Long Beach. The oil companies filed complaints in federal court seeking declaratory judgments that the companies had properly charged their windfall profit tax payments against their net profits accounts, in accord with the terms of the contract. The City of Long Beach subsequently filed an action in state court against the oil companies, seeking declaratory relief and damages based on its interpretation of the contract.

In deciding whether abstention was justified, we found that substantive progress had already occurred in federal court before the state action was filed, because the issues before the district court had already been fully briefed and were ripe for resolution. We also determined that allowing litigation to continue in federal court at the same time litigation progressed in state court would not result in duplication of efforts or inconsistent results, because the parties had stipulated to be bound by the district court's construction of the contract. As a result, we held that abstention was not warranted.

because there is no property in dispute. The insurance money that AIU seeks to recover is not the sort of tangible physical property referred to in *Colorado River*.

The second factor we must examine when deciding whether to apply *Colorado River* abstention is the inconvenience of the federal forum. Continental argues persuasively that the California federal forum is inconvenient. The insurance policies in dispute in this case were issued in New York and the claim of loss was presented there as well. Almost all of the witnesses Continental plans to call to establish its affirmative defenses are located in New York; many are nonparty witnesses who would not be subject to the subpoena power of the California federal court.

In contrast, AIU has not shown any relevant contacts between the matters at stake in this lawsuit and the state of California. None of AIU's witnesses reside in California. AIU can only make the feeble argument that the California forum is more convenient because it is closer to the Philippines than New York, which means its witnesses from the Philippines will not have to fly as far.

We agree with the assessment by the district court that this forum was selected for its inconvenience to defendant, with little countervailing convenience to plaintiff.

AIU argues that if the California federal forum is inconvenient for Continental, transfer rather than abstention is the proper way to resolve the inconvenience issue. AIU thus ignores the fact that *Colorado River* explicitly cites inconvenience as one of the factors to be assessed when courts are deciding whether to abstain. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. 1246–47.

The third factor to be considered is the desirability of avoiding piecemeal litigation. Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. The New York state court has already decided several substantive issues in this case, such as whether the loss suffered by AIU falls within the terms

of the policies, and whether Aetna is a proper party to the lawsuit. If the district court decided to exercise jurisdiction, it would have to decide these matters anew, requiring duplicative effort and creating a strong possibility of inconsistent results. *See Ryder Truck Rental*, 554 F.Supp. at 281 (district court abstains because "[e]xercising federal jurisdiction in this case would not only require duplication of time and effort on the part of the litigants and the Court, but would also create the possibility of inconsistent results").

■ Continental argues that AIU is trying to carry forward the rulings of the New York court that are favorable to it, such as the ruling that it sustained a loss under the terms of the policies, while at the same time trying to avoid adverse rulings, such as the evidentiary rulings. Continental is correct when it concludes this is the very evil inherent in piecemeal litigation. The mere fact that the New York state court has temporarily stayed its action after two-and-a-half years of litigation does not obviate the possibility of piecemeal litigation.

The danger of piecemeal litigation in this case is real, in contrast to *Mobil Oil*. In *Mobil Oil*, we concluded that the district court's concern about piecemeal litigation was unwarranted. 772 F.2d at 542.

The fourth factor to contemplate when determining whether to abstain is the order in which jurisdiction was obtained and exercised. It is true that this factor must be applied in a pragmatic, flexible manner, so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions. *Cone*, 460 U.S. at 21, 103 S.Ct. at 940. In this case, substantive progress has been made in the two-and-a-half years of litigation in state court. The state court judge has decided seven motions and the parties have engaged in substantial discovery. Very little progress has occurred in the federal lawsuit. After AIU filed its complaint in district court, Continental moved immediately for abstention.

In this respect also the present case differs dramatically from *Mobil Oil*. In *Mobil Oil*, the federal action was filed first. Moreover, we found that "substantial progress" had occurred in the federal court, because the substantive issues had been fully briefed and the entire dispute was ripe for resolution. 772 F.2d at 542.

Although it is distinguishable from *Mobil Oil*, the present case resembles *Ryder Truck Rental*. In *Ryder Truck Rental*, the district court abstained because the plaintiff had originally brought suit in state court before suing in federal court. The district court stated, "Having elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum." 554 F.Supp. at 280. In the present case, AIU should also be bound by its initial choice of the state forum, given the substantial progress that has occurred in the state court litigation.

### D

AIU argues that abstention should not be allowed in this case because of the probable inadequacy of state court proceedings, citing *Cone*, and *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817 (9th Cir. 1975). However, these cases differ markedly from the present case. The inadequacies of the state forums in *Cone* and *Weiner* were far more serious than what AIU portrays as the "inadequacy" in this case. In *Cone*, the federal court could compel arbitration but there was doubt whether the state court could do so. As a result, throwing the case back to state court meant the recalcitrant party would be free to sit and do nothing—neither litigate nor arbitrate. 460 U.S. at 26–27, 103 S.Ct. at 942–943. In *Weiner*, the state court possibly lacked subject matter jurisdiction. 521 F.2d at 821. In contrast, the state court

procedure in this case that AIU labels inadequate is nothing more than a set of evidentiary rules AIU does not like. As Continental correctly points out, neither *Cone* nor *Weiner* suggested that adverse evidentiary rulings could ever rise to the level of rendering a state court proceeding inadequate.

Moreover, the mere fact that the New York state court has stayed its action temporarily does not make the state court proceeding inadequate. Under the terms of its stay, the New York action will automatically revive within thirty days of a final nonappealable judgment in the federal lawsuit.[4]

### E

The district court held that the prevention of forum shopping would promote wise judicial administration. Although this factor was not spelled out in *Colorado River*, it is appropriate to consider given the flexible and pragmatic way in which abstention is to be applied. *See Cone*, 460 U.S. at 21, 26, 103 S.Ct. at 940, 942. The district court was justified in holding that AIU was forum shopping, or "rule-of-evidence shopping." After two-and-a-half years, AIU is abandoning its state court case solely because it believes that the Federal Rules of Evidence are more favorable to it than the state evidentiary rules.[5] This epitomizes forum shopping.

In sum, after considering these myriad factors, we conclude that *Colorado River* abstention is warranted. However, we emphasize that our holding springs from the exceptional circumstances in this case and must be narrowly construed. Our ruling should in no way cast doubt on *Mobil Oil* or its accurate statement that in abstention cases the balance must always

---

4. Although the stay order by the New York state judge is perfunctory and merely states that AIU's motion for a stay is granted, AIU's motion only asked the court to stay the state court action until thirty days after the entry of a final, nonappealable judgment in the federal action. *See* CR 29, Exh. F.

5. AIU claims that Mr. Opinion's expert opinion on "ultimate issues" would be barred by New York rules of evidence, even though such testimony would be admissible under Federal Rule of Evidence 704. AIU also complains that New York does not have the hearsay exceptions for the sworn statements and transcripts of statements that exist under Rules 803(8)(C), 803(24), and 804(b)(5) of the Federal Rules of Evidence.

tip heavily in favor of exercising jurisdiction. *See Mobil Oil,* 772 F.2d at 541.

## F

 In an attempt to explain away forum shopping concerns, AIU argues that the equitable tolling doctrine permits it to refile in federal court. This argument lacks merit. The equitable tolling doctrine allows tolling of the statute of limitations when technical forfeitures would unjustifiably prevent a trial on the merits. *See Rumberg v. Weber Aircraft Corp.,* 424 F.Supp. 294, 299 (C.D.Cal.1976). This doctrine simply does not apply to the present case, where AIU was fully able to proceed to trial in state court and where there was no issue of technical forfeitures. AIU's problem is not that the New York state court cannot reach the merits of the case for some technical reason. Rather, AIU's problem is that the New York state court can reach the merits and might resolve them against AIU. The equitable tolling doctrine does not apply to permit refiling of this two-and-a-half year old state case in federal court.

## III

 If even the slightest doubt remains about whether the district court correctly dismissed this case for abstention reasons, it is clear that the rationale that prohibits plaintiffs from removing cases to federal court under 28 U.S.C. § 1441 also bars AIU from bringing this repetitive lawsuit in federal court.[6]

The right to remove a state court case to federal court is clearly limited to defendants. 28 U.S.C. § 1441. Section 1441(a) states that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the *defendant or the defendants,* to the district court of the United States...." 28 U.S.C. § 1441(a) (emphasis added). In *Ore-*

*gon Egg Producers v. Andrew,* 458 F.2d 382 (9th Cir.1972), we categorically stated that "[a] plaintiff who commences his action in a state court cannot effectuate removal to a federal court even if he could have originated the action in a federal court and even if a counterclaim is thereafter filed that states a claim cognizable in a federal court." *Id.* at 383. Had AIU merely attempted to remove the New York state court action to federal district court in New York, it is indisputable that this would have been improper under 28 U.S.C. § 1441 and that the federal court would have lacked jurisdiction.

 However, the difficulty arises in this case because AIU did not actually remove the original suit to federal court. Instead, AIU filed a second suit in federal court, based on the same facts and claims as the first suit. The second suit can be labeled a "repetitive lawsuit"—a parallel action brought by the same plaintiff in a second forum. *See* Note, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River,* 44 U.Chi.L.Rev. 641, 666–67 (1977); *see also Ryder Truck Rental,* 554 F.Supp. at 280, n. 7. The real issue in this case becomes whether AIU should be blocked from filing this repetitive suit.

Continental could cite no case, and we can find none, that unequivocally announces a rule barring a plaintiff from filing a repetitive lawsuit in federal court after initially filing in state court. Instead, Continental merely cited cases that construe the removal statute. Nevertheless, we are persuaded by the reasoning articulated in the removal cases Continental cited, because the filing of the repetitive lawsuit had the same effect as if AIU had actually removed the original suit.

In *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), the Supreme Court analyzed the legislative history of the removal statute then

---

**6.** While Continental claims that AIU impermissibly removed a state court action to federal court, we must note that this description is not completely accurate, because AIU filed a second suit rather than removing the initial suit. Nonetheless, we believe that AIU's actions were improper for the same reasons that actual removal by AIU would have been improper.

contained in 28 U.S.C. § 71 and now embodied in 28 U.S.C. § 1441. The Supreme Court quoted a House Report stating that "it is believed to be just and proper to require the plaintiff to abide his selection of a forum." H.Rep. No. 1078, 49th Cong., 1st Sess. 1 (1887), *quoted in Shamrock Oil*, 313 U.S. at 106, n. 2, 61 S.Ct. at 871 n. 2. After assessing the legislative history of the removal statute in 28 U.S.C. § 71, the Supreme Court found that Congress had intended to eliminate the automatic right of a plaintiff to remove. The only relevant difference between the removal statute the Supreme Court was construing and the current removal statute in 28 U.S.C. § 1441 is that the statute before the Supreme Court allowed the plaintiff to remove in cases where local prejudice against the plaintiff existed. The current removal statute has eliminated even this limited right of removal by a plaintiff. *See* 28 U.S.C. § 1441. In short, both these codifications of the removal statute seem to reflect a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant. The same rationale applies to the present case, in which AIU is trying to alter the forum after two-and-a-half years of litigation in state court.

Similarly, in *Ryder Truck Rental,* the court noted that the same policy considerations reflected in the restrictions on removal should come into play in repetitive lawsuit situations. 554 F.Supp. at 280, n. 6. Noting that a plaintiff in a diversity suit can choose between a state and federal forum when it initiates the suit, the court concluded, "Having elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum." *Id.* at 280.

After considering the rationale set forth in the removal cases discussed above, we find that AIU should not be permitted to accomplish, by the *refiling* of its state court complaint, what would clearly be prohibited if AIU tried to *remove* to state court. The district court was justified in dismissing AIU's complaint for this reason as well as for abstention reasons.[7]

## IV

The district court did not abuse its discretion in deciding to abstain. Abstention was warranted in this case for several reasons, including: (1) the inconvenience of the federal forum; (2) the possibility of piecemeal litigation; (3) the order in which jurisdiction was obtained; and (4) the prevention of forum shopping. The district court was also correct in dismissing AIU's complaint to prevent AIU from making an end-run around the prohibitions against removal by a plaintiff. After over two-and-a-half years of litigation in state court, AIU should be required to abide by its choice of a forum. The district court's decision to dismiss the case is AFFIRMED.

7. We are not persuaded by AIU's argument that *Mobil Oil* rejected as inappropriate any consideration of removal in abstention cases. According to AIU, *Mobil Oil* stands for the proposition that because removal is not one of the specific criteria for abstention spelled out in *Colorado River* a court cannot consider the issue of removal. Appellant's Reply Brief at 21. AIU's interpretation of *Mobil Oil* is misguided for several reasons. First, there is no support in *Mobil Oil* for AIU's sweeping assertion that removal cannot ever be considered in abstention cases. Second, the language in *Mobil Oil* that AIU cites deals with the issue of removal only in the context of declaratory relief actions. *See* 772

F.2d at 541. A different analysis must be used in declaratory judgment actions, independent of the *Colorado River* analysis. *Transamerica Occidental Life Insurance Co. v. Digregorio,* 811 F.2d 1249, 1254 (9th Cir.1987). Finally, the very portion of the *Mobil Oil* opinion on which AIU relies has been called into question. *Id.* at 1254.

By rejecting any consideration of removal because removal is not explicitly listed as a factor to be considered in *Colorado River,* AIU demonstrates a slavish adherence to a mechanical checklist of abstention factors. This rigidity runs counter to the flexible manner in which *Colorado River* is to be considered. *See Cone* 460 U.S. at 21, 26, 103 S.Ct. at 940, 942.